Good morning. Illinois Appellate Court, First District Court is now in session. The Third Division, the Honorable Justice Margaret McBride presiding. Case number 1-8-2-5-3-8. People vs. Andrew Binion. Good morning to the attorneys and presiding with me today on this appeal are Justices David Ellis and Justice Eileen O'Neill Burke. We have previously, I don't know if either of the attorneys here, would you would you identify yourselves for the record? Are you able to hear? Yes. Okay. Okay. Joseph Beddock of the Office of the State Appellate Defender. Good morning, Mr. Beddock. Eileen Diaz with the Cook County State's Attorney's Office. Good morning, Ms. Diaz. Good morning. So what we've done in the past is to give each side about 10 minutes for uninterrupted argument. And after that, we will then have questions by the justices. We will also have time for rebuttal after that. That's been our format. We think it seems to work. And if that's agreeable, that's how we're going to proceed. So, all right. Bednock, would you like to begin then with your opening remarks? Yes, Your Honor. Good morning, Your Honors. My name is Joseph Bednock of the Office of the State Appellate Defender, and I'm arguing on behalf of my client, Andrew Binion. Binion has raised three testimony regarding the armed hijacking of his car, but I'm happy to answer any questions or address any concerns that Your Honors may have regarding the remaining issues. At trial, the court permitted Darnell Veal to testify in detail about the armed hijacking of his vehicle, which occurred approximately 20 hours before the incident at issue in this case. The trial court erred by finding that this evidence was relevant to the issue of Binion's knowledge, the state was required to present some evidence that Binion was involved in or at the very least knew about the hijacking. The state failed in both of these respects. As to whether Binion participated in the hijacking, even the state does not dispute that there was no evidence that Binion participated. If there had been such evidence, the state would have moved to admit Veal's testimony as other crimes evidence. Nor was there any The state asserts that Binion's flight from police demonstrates that he knew the car was stolen. However, the question is whether Binion's flight establishes that he knew the car was stolen during the armed vehicular hijacking testified to by Veal. Because the state failed to present any evidence on this point, Veal's testimony was irrelevant and should not have been admitted. In addition to being irrelevant and therefore lacking in probative value, Veal's testimony was also highly prejudicial. Although Veal did not identify Binion as one of the hijackers, his testimony nevertheless gave the jury the clear impression that Binion had committed a more serious offense, armed vehicular hijacking, than the one for which he was on trial. Critically, Veal never ruled out the possibility that Binion was one of the hijackers. He stated only that he could not identify him as one. The jury thus likely inferred that Binion was involved in the hijacking and that Veal's inability to identify him as such was simply due to the chaotic nature of the hijacking. This is especially true given the lengthy, detailed nature of Veal's testimony. The jury may well have questioned why, unless Binion was involved in the hijacking, the state would devote such a large portion of its case to discussing the hijacking. Accordingly, through Veal's testimony, the jury heard evidence strongly implying that Binion had not only participated in a robbery, but that he or someone he was with had committed the robbery while armed and had even discharged a firearm in the process. Veal's testimony regarding this reckless, dangerous hijacking was thus highly prejudicial. In both of these respects, the irrelevant nature of Veal's testimony and its highly prejudicial effect, this case is similar to People v. Jacobs. Relevant to this case, the complainant's son in Jacobs was permitted to testify that five days after the burglary of his parents' home, during which their car and some jewelry were stolen, he saw the defendant drive the parents' stolen car to a pawn shop, thereby implying that the defendant had been involved in the burglary. As to relevance, this court found that the probative value of the son's testimony was slight at best. According to this court, the state could have just as easily established that the son saw the defendant with the stolen vehicle without creating the inference that the defendant was involved in the burglary and the jewelry theft. Here, Binion maintains that, absent evidence that he participated or knew about the hijacking, the entirety of Veal's testimony was irrelevant. However, as in Jacobs, even assuming that Veal's testimony was relevant, there was absolutely no reason whatsoever for Veal to testify about the highly prejudicial details of the hijacking. He could have simply stated that his car was stolen 20 hours before the incident at issue in this case. As to prejudice, this court in Jacobs found that the son's testimony created an unmistakable inference that defendant was involved in another crime for which he was not on trial. The same is true in this case. Although Veal did not identify Binion as one of the hijackers, his testimony nevertheless clearly implied that Binion had participated in the hijacking. Accordingly, as in Jacobs, the jury heard evidence that the defendant was responsible for committing a more serious offense than the one for which he was on trial. Critically, the state sought to reinforce this impression with its closing argument. The prejudice to Binion was therefore pronounced. In sum, under Jacobs, the court erred by admitting Veal's testimony. This error was not harmless beyond a reasonable doubt. By giving the jury the clear impression that Binion was involved in the hijacking, Veal's testimony tainted Binion's entire trial. The state's evidence would have struck the jurors in a completely different light had they not been led to believe that Binion was responsible for the hijacking. Moreover, as noted, the state's closing argument made repeated references to the hijacking and strongly implied that Binion had been involved. Veal's testimony was thus a key part of the state's case and undoubtedly contributed to Binion's conviction. This is especially so given that the court did not issue a limiting instruction, meaning that the jury had no way of knowing that they were supposed to consider Veal's testimony only as it pertained to Binion's knowledge. Lastly, the Illinois Supreme Court has held that the erroneous admission of other crimes evidence carries a high risk of prejudice and ordinarily calls for reversal. Because, for the reasons set out above, Veal's testimony functioned as other crimes evidence, this court should find that its admission was not harmless beyond a reasonable doubt and reverse Binion's conviction and remand for a new trial. Moving on to issue two, Binion asked that this court find that the state failed to prove that he was eligible for class X sentencing based on a 2004 conviction for delivery of a controlled substance, which he committed when he was 17. To begin, this court should be made aware of some developments in people v. Miles, which Binion's argument relies on. The Illinois Supreme Court granted the state's petition for leave to appeal in Miles on September 30th. Apparently, however, Mr. Miles is now deceased and the state has thus moved to dismiss the appeal and vacate the judgment of the appellate court. Notwithstanding this development, Binion maintains that the reasoning in Miles is sound and should be followed by this court. The class X sentencing statute states in relevant part when a defendant is convicted of a class 1 or a class 2 felony after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a class 2 or greater felony, the defendant shall be sentenced as a class X offender. Here, Binion's 2004 conviction for delivery of a controlled substance committed when he was 17 would not now, meaning at the time he allegedly committed the current offense, be classified as a class 2 or greater felony. Today, delivery of a controlled substance committed by a 17-year-old would be resolved at juvenile proceedings. The state's arguments to the contrary essentially ignores the word now in the class X sentencing statute. The use of the word now indicates a clear intent that courts must look to how the potential predicate offense would have been resolved had it been committed at the time of the current offense. It thus follows that Binion's 2004 conviction for delivery of a controlled substance did not qualify him for class X sentencing because it is not an offense that would now be classified as a class 2 or greater felony. Instead, it would be resolved at juvenile proceedings. Accordingly, this court should find that the state failed to prove that Binion was eligible for class X sentencing. Although Binion's brief asked this court to remand for re-sentencing, this court should, due to the COVID-19 pandemic and in the interest of judicial economy, exercise its authority under Illinois Supreme Court Rule 615 and reduce Binion's sentence to seven years in prison. Based on his 2005 conviction for second-degree murder, Binion could have received an extended-term sentence of 14 years in prison. His 16-year sentence that he did receive is just below the midpoint for a class X offense. A seven-year sentence is therefore in keeping with the trial court's intent as it represents the maximum sentence for a class 2 offense and is just below the mid-range sentence for an extended-term class 2 offense. This court should, therefore, vacate Binion's class X sentence and impose a seven-year sentence. Lastly, if this court does not find that Binion was improperly sentenced as a class X offender, it should nevertheless find that his 16-year sentence for PSMV was excessive and remand for a new sentence in hearing. Counsel, did you want to save some time for rebuttal? Yes, Your Honor. That's it. I can reserve the rest of my time for rebuttal. All right. Thank you. And we will give you time for rebuttal. All right. At this time, I'm going to ask Justice Ellis if he has some questions to pose. Thank you, Justice McBride. Just a couple of questions for counsel. Good morning, counsel. How are you? Good morning. How are you? I think we're all tired after watching TV last night. So sorry to make you have to orally argue a case the next morning. Counsel, the witness who had his car hijacked testified in detail at trial as to the circumstances of the carjacking. But he at no time suggested that the defendant was one of the people who carjacked his car. Why do you think that there was an inference to be drawn there that he was one of the people who did it? Well, because of the fact that because of its its prominent place in the state's case, it occupied a large portion of the of the of the state's of the state's case in chief. And as I said, the jury, then when they hear this evidence, they're going to be thinking, OK, well, and so, no, he couldn't he couldn't identify him. He didn't say definitively that Binion was not involved. He simply said that he couldn't identify them. So given its prominent place in the state's case in chief and the veils inability to rule out Binion's involvement, the jury was presented with this evidence from which they could clearly infer that, you know, draw the inference that Binion had been involved in the hijacking. Yeah, I take your point. It's a it's a fair point that he didn't identify the people and say that the defendant wasn't one of them. He said he couldn't identify them. But by the same token, if you're a juror, couldn't you just as easily draw an inference that if he had since since since the defendant is sitting there in court being charged with one crime, if they thought he committed this crime, too, they would have charged him with that. Well, but then it's the same situation that was presented in People v. Jacobs, where the court I mean, the jurors could have they hear this evidence that the defendant is at a pawn shop. You know, they're therefore in this as in this case, creating the inference that he had been involved in the burglary. And there was obviously no evidence presented in Jacobs that the defendant had actually been involved in the burglary. But because of the potential for the very strong potential for the jury to draw the conclusion that he had this this court found that its admission was was unduly prejudicial. Okay. My last question is about the the harmless error discussion, you touched on it a little bit. We essentially have to come to the conclusion, if we if we find error, we have to further come to the conclusion that it made a difference in the outcome of the case. Wasn't there pretty strong evidence that this guy knew he was driving in a stolen car. Well, there was there was his flight from the car and the the license plates had been changed. But once the jury had been primed to believe that Binion was involved in the hijacking, which feels testimony did any alternative or innocent explanations for those two facts. The jury, they pretty much went out the window for the jury. At that point, the jury then after hearing Binion's or hearing feels testimony is automatically going to make the leap to to a guilty explanation for those two facts. When, you know, had it not been presented with those two facts, or with Binion with feels testimony, they could have drawn a number of inferences from that evidence, not necessarily guilty or criminal inferences. Well, under your theory of how this should have gone at trial, Judge Lynn should have allowed them to be some evidence that the car was stolen. Right. Surely you, you would agree and I think you have agreed that the state had the right to put in some evidence that this car was taken away from from the owner. Right. So if even if you took out all the violence and you just said my car was stolen, combined with the defendant being pulled over and running from the vehicle and admitting that he ran from the vehicle to the police. Isn't that still sufficient evidence that he knew the car was stolen. Well, the question was never, you know, the deals testimony just goes to in that scenario where bill just testifies that his car was stolen. It would just go to establishing then that the car was stolen because the state has to prove that the car was stolen and that the defendant knew that it was stolen. And so, in that scenario, it wouldn't establish that it would the fact that the car was stolen wouldn't establish in the same way that Binion knew that the car stolen. It is all of the details and the length that feel feels testimony went to that gave the jury the impression that that Binion somehow knew about this hijacking or had been involved in the hijacking, whereas testimony just limited to the fact that the car was stolen wouldn't wouldn't touch upon those issues. Okay, but what innocent explanation, would he have for fleeing the car curbing the car and fleeing when he's pulled over by a police officer. Well, not necessarily. I apologize for my choice of words, not necessarily an innocent explanation, but not necessarily drawing the immediately leaping to the conclusion that he fled from the car. As a result of, you know, because he had participated in the hijacking and therefore knew the car was stolen flight, you know, he, the jury could have drawn the inference that he fled from the police. Because of prior bad experiences with the police or perhaps as a result of contraband or any number of factors. Okay. Thank you, counsel. Justice Burke, do you have questions at this time. I do. Mr. The defendant was guilty of the violence that vehicular hijacking during their closing argument. Can you tell us specifically what the state said that reinforce that Yes, they made a number of comments. First, they said early, early morning that car that was the gateway to feel future path was stolen. And lo and behold, hours later, this defendant is found driving that vehicle. So therefore, drawing a direct connection between the theft of the vehicle and Binion's possession of it. Then again, during its rebuttal, the state said the state stated. What can you do in 20 hours. Well, you can gather up your two best buddies, you can change out the plates on the car. You can get distance from where that car was stolen and then you could feel comfortable enough to then drive on the streets of Chicago, because enough time has passed since the car was stolen. Therefore, again, through that comment implying that Binion had been involved in the in the hijacking. So I'm going to, um, Justice Ellis asked you about. Isn't there some evidence that the state has bring out that the car was stolen. And so my question is, if this case went back the state would still be allowed to bring out the fact that the car was stolen, just none of the facts regarding. Is that your position regarding. Yes, Your Honor, the state would have to establish that the car was stolen so, but they would not need to bring in all of this other extraneous evidence about a robbery is, you know, is testifying that his friend was robbed that there was a gun that one of the people fired a shot during the none of that is in any way relevant to this case. Okay, so you also said that the court admitted all of this testimony as other crimes evidence, I thought the court admitted it to explain the course of the investigation and not all the crimes evidence. The court, I'm sorry, I apologize if I said that the court admitted is other crimes evidence. The court did not admit it as other crimes evidence, but the court did admit it on the basis that it was relevant to Binion's knowledge the court specifically stated that it, you know, it goes towards showing that Binion knew that the car was stolen, which is, you know, gets to the crux of the issue because if it's not being admitted as other crimes evidence if there's no, there's no suggestion that Binion participated in it. How can a crime committed by somebody else go towards Binion's knowledge. Thank you. I have no other questions. Alright, so I have a couple. You suggested that the court didn't give a limiting instruction was one ever requested by the defense. I'm, I'm not, I'm not sure your honor. I don't know that the record reflects that but aren't you kind of, you didn't really raise that as a separate error that the court should have given a limiting instruction, but that is your position that either. There should have been some instruction about knowledge, or, you know, I think you have a reasonable argument that this was like any other other crimes evidence case. But isn't it the obligation to actually submit an instruction to the court, so that we can actually even look at that. Yes, your honor. And to be clear, that's not the crux of my, that's not the crux of my argument, it's that is most I raised the issue of the, the lack of a limiting instruction, just to emphasize that the jury was basically, you know, kind of blowing in the wind here with this evidence not really being told how to consider it. And so, at the very, at the very, you know, had there been a limiting instruction, I believe this testimony still was improperly admitted, but it just the fact that there wasn't one I, I believe goes to, to emphasize the prejudicial effect of this testimony, so that the jury was left out there. Actually, they could consider it really however they want it. They could have considered it as other crimes. Now, part of the defense argument in closing was to defend against the idea that he was not a participant in this earlier crime. Right. Yes. All right. And so even, would you say that even if you let in evidence of knowledge that it should be limited to facts that it shouldn't become the focus of, of the evidence of trial here. I mean that's what the rule is for other crimes evidence that it should always be limited, and that it should not become the focal point of a trial. Should that rule apply when when it's being used for knowledge only as well. Yes, Your Honor, and especially in this case where as I said you know it basically is functioning as other crimes evidence. So I would think that that rule that just limiting it to the, the, the absolute minimum facts necessary to establish that the car was stolen would apply in would apply in this case, you know, in this case actually perfectly illustrates the necessity of that rule. And you've kind of conceded haven't you that if this were to go back that there should be some that that it would be unfair if the state were not allowed to put in any evidence regarding this knowledge of that the vehicle was still, I would say that the evidence should be strictly limited to the fact that the car was stolen. All right. Now on the sentencing question is, I know there are a number of cases, I think maybe mostly unpublished that have gone along with miles, is there, is there a published case from one of the other districts that agreed with miles, do you know, my research has not uncovered any any published cases. Okay, now, um, the other last question I have, you've actually asked us now to reduce a sentence to seven years. Am I wrong, did you actually make this request in your reply brief or even the opening brief I could be wrong but I don't remember that request. I did not, Your Honor, and I tried to acknowledge that during my argument I apologize if that didn't come out. But I would add, based on the change in circumstances in regard to the coven 19 pandemic, that this this court does exercise its authority under rules, 615 remand for a new set vacate the class sentencing and remand. All right. All right, well your primary argument is to remand for a new trial or actually you did ask for reversal outright but but your primary relief goes to the evidence about knowledge that you believe was introduced as other crimes. All right. Okay, we're going to give you some time for rebuttal. And now we're going to turn it over to Miss Diaz to argue for the state. Good morning again Your Honors. On behalf of the people. As Your Honors have been discussing defendant Andrew Binion was convicted following a jury trial of possession of a stolen stolen motor vehicle or PSMV and he was sentenced as mandatory class acts of under 16 years in the Illinois Department of Corrections, even though he SMV is a class, typically a class to felony. So the first issue defendant raises on appeal is one that he raised below through the motion and lemonade seeking to bar Anthony deals testimony, which is that deals testimony was both irrelevant and unduly prejudicial. The court, obviously, denied defendants motion and lemonade, and in doing so it reason that because the state had to prove that defendant possessed both both that defendant possessed a stolen motor vehicle, and it knew that the motor vehicle was stolen the evidence surrounding the hijacking of the vehicle. Or the evidence around the taking of the vehicle, including the hijacking and the chop that was fired were probative of defendants knowledge of the fact that he possessed a stolen motor vehicle. As Your Honors know, evidence is admissible if it is relevant and not unduly prejudicial and evidence is relevant if it tends to make a fact that issue, more or less probable. In light of the evidence, and here we maintain as we did in our brief and as we did below at Anthony deals testimony was in fact probative of defendants knowledge, he'll testify that approximately 20 hours. Prior to when defendant was found in possession of a motor vehicle. He was at a gas station where the vehicle was taken from him through a hijacking taken by two to three individuals feels testimony also revealed that he could not do to the lighting conditions of the gas station identify who the individuals who hijacked In court, he said he did not recognize defendant didn't know who he was a defendant had no permission to have his vehicle. And we'd note that during closing argument defense counsel pointed out that the distance between where the vehicle was taken and where defendant was found in possession of a vehicle. Was approximately nine miles apart. Now, this was not part of the evidence, but given the locations that were disclosed through the testimony of the officers and Anthony field jury could have put this together that it was approximately nine miles apart. So between the 20 hours, the proximity and time of when the car was stolen in the proximity in place of time in place of when the car was stolen where the car was stolen and where it's out when and where it was found evidence is certainly probative of defendants knowledge, because it makes it. Given the circumstances surrounding the taking of the vehicle as defendant noted in his or conceded in his reply brief the way the vehicle was taken is certainly something that would have drawn the police's attention. We submit that it would also have drawn the attention of the community. Where the vehicle was taken, and because of the nature in which it was taken, it was not an innocuous or seemingly innocuous way it was, you know, a hijacking. We submit that it is more probable in light of deals testimony that the defendant either interacted in that short period of time in that short distance either interacted with individuals who participated in hijacking or who had knowledge of the hijacking. Again, this doesn't come this evidence didn't conclusively established a defendant possess that knowledge, but it certainly made it more probable than say, if the vehicle had been taken without anybody knowing at first in California, a year prior, contrary to defendants arguments, we would not be making the argument that something like that would be admissible as relevant and probative of defendants knowledge so we do think that we maintain that the evidence. While not dispositive or conclusive certainly made it more probable that defendant possess knowledge. As far as the prejudice, the undue prejudice defendants arguments are belied by the record. Anthony veal never once insinuated that defendant was involved in this hijacking and during closing argument Defense Council was able to attempt to debunk the state's arguments that the proximity in time and place actually showed that defendant possess the requisite knowledge. So, it is our opinion that this was not unduly prejudicial and this is especially so because even if even without Anthony deals testimony which we contend was not a material factor in this conviction, the defendant still would have been convicted. He fled from the police, he fled aggressively with two individuals in the car. He turned into a one way street hit a vehicle, then fled by foot, and he had presumably valid license plates in the vehicle, even though he was driving with expired license plates. So, even without Anthony deals testimony defendant showed consciousness of guilt when he fled from the police, and that in conjunction with the license plates that were found inside the car and on the vehicle. That would be enough to show that defendant knew that he was in possession stolen motor vehicle, it would be enough to prove him guilty of that offense beyond a reasonable doubt. As far as, and you know to wrap that up for these reasons and those mentioned in a brief we asked this court to find the trial court did not abuse its discretion when admitting Anthony deals testimony. And as far as the second issue defendant argues that it relies on miles to argue that he was improperly sentenced as a class X offender. We stick by what we argued in our brief. This court, we would ask it to reconsider its decision miles because that was premised upon misconstruction of the statute the sentence and statute issue, and that's the same sentence and statute which is an issue now, it's the classic sentence and statute, which as defendant or defense counsel noted. It states that when a defendant was 21 years of age or older is convicted of class one or two felony which the defendant was here possession of a stolen motor vehicle as a class two family felony when a defendant in that position has been twice before convicted of a class one or two felony he must be mandatorily sentences a class X. Here defendant when he was 18 he committed second degree murder last one felony, they're not disputing that what they are disputing is the delivery of a controlled substance that he committed when he was 17 and they're arguing that in light of miles, and the 2016 amendments that juvenile court act. This court should essentially invalidate or convert the conviction he obtained as a juvenile into a juvenile adjudication for purposes of the sentencing statute and defendant is wrong. Because in Fitzsimmons versus no goal, our Supreme Court verify that there is no distinction between a conviction that someone obtains when he is a juvenile and a conviction that is obtained when somebody is an adult, all that happens is that once somebody is no longer of an age where juvenile court has jurisdiction. That's it, the juvenile court no longer has jurisdiction but that doesn't invalidate conviction that somebody obtained when he was a juvenile, and to the extent that defendants argument relies on the amendments, the 2016 or the 2016 amendments, the juvenile court act. We find that unpersuasive because it's clear from case law that those in from the from the amendments that those are supposed to be effectively applied and not retroactively applied and asking this court to convert his commission conviction into a juvenile adjudication defendant is effectively asking this court to circumvent the amendments to the juvenile court act and again convert his conviction into a juvenile adjudication, but a conviction, there's no difference between a juvenile conviction and a conviction obtained when somebody is an adult. And furthermore, the classification of the offense that defendant committed, the delivery offense, that has not changed. The elements have not changed. So what defendant committed and I believe it was 2004-2005, that delivery offense contains the same elements as it does today. And so, even though age is something that is taken into account now, it is not, it is not an element that changes the classification of an offense. So, for these reasons, and those stated in our brief, we asked this court to reconsider Miles and to find that defendant was properly, according to the language of the statute, was properly sentenced as a classified offender. And if I have any time remaining, I'd briefly like to touch upon the sentencing. Defendant argues that 16 years is excessive, primarily relying on the fact that the trial court paid, according to defendant's argument, too much attention to the priors that he committed when he was 17 and 18, being delivery of lethal substance and second degree murder, which were both class one felonies. Defendant's argument paints too narrow a picture of what the record actually establishes. What the record establishes is that the trial court was more than justified in meeting out a 16 year sentence. Defendant has led a life of crime, which justifies a longer sentence. In addition to the two offenses that he is complaining about in the sentencing argument, while defendant was on bond for the current possession of a stolen motor vehicle offense, he committed another offense, which was credit card forgery. He has shown very little rehabilitative potential in this time, but what he has shown is that a sentence that is above the minimum is necessary to deter defendant from committing other crimes this time, and it is necessary, frankly, to protect the community at large. So for these reasons, we ask this court to, before we open it up for questions, we ask your honors to affirm both the judgment and sentence below. All right, thank you. Justice Ellis, do you have some questions? Thank you. Good morning, counsel. Good morning, Justice Ellis. Why did the jury have to hear the details of the carjacking? I mean, why wouldn't it have been enough to say the car was stolen? Or even the car was carjacked, period, and that's it. Well, I mean, that would have accomplished the goal of allowing the state to show that it was stolen. Without any of this other detail, why did they have to hear about the number of people? Why did they have to hear about the gunshot? How did that help your case? And why didn't that impact negatively on the defendant? Because the fact that there were more people involved and the fact that a shot was fired made it more likely that this drew police attention as it did. And it made it more probable that people in the vicinity of where this happened and in the surrounding community would know about this. And that in turn would make it more likely that defendants knew about this independently before interacting with individuals who presumably took the vehicle or who had knowledge of how the vehicle was taken. This wasn't taken in a quiet way that wouldn't have aroused interest or given rise to so much attention. But that does strengthen the state's case. So your argument is that explains why the car was so far away from where the carjacking occurred? I'm sorry. I'm sorry. Can you hear me? Yeah. I just wanted more clarification on that question as far as... What is the relevance of the police paying a lot of attention to this and the community at large paying a lot of attention to this? I thought what you were saying was the relevance of that was to explain why the car was found far away from where the carjacking occurred. Because they knew that it was a hot thing at that moment, so they wanted to get far away. If I'm wrong about that, then what was the reason? Why did the jury need to hear the details that made it a police issue? Because the fact that it became a police issue meant more people were aware of it. Not just the police, but it made it more probable that people in that area were more aware of it. So what? Who cares? Why does that matter? It matters in that, again, it's our position that it makes it more probable that the defendant came in contact with individuals who were aware of how this vehicle was taken. And it doesn't conclusively establish it, but it makes it more probable that he knew because of the public way in which this was taken and because of the number of people who knew, presumably. In other words, it makes it more likely that he knew it was stolen because it would have been something everybody in the neighborhood heard about. That's what I was trying to get across, and I apologize if I sort of, that's what I was trying. And again, it does not conclusively establish it, whether it was absolutely necessary or not. I mean, our position isn't that it wasn't because it wasn't a material factor in the conviction, but it did strengthen the state's case and the state is allowed to put on competent evidence. Is that theory that you just said, the reason why it's so important to know about all the violent encounter that happened? Was that argued by the state when they were arguing that this evidence should be put in? Was that the justification that they gave? I don't recall. I think the justification was a lot broader than that. The justification was that it was probative of his knowledge, and neither the judge nor the state articulated extensively how that was so. So, the record does not bear that out. What about in closing argument? Did the prosecutor mention that in closing argument, that the reason this is so important to us, this violent encounter with a gun going off, was to show that he must have known about it? No, I don't know. To my recollection, that did not come out in closing argument, Your Honor. And again, we understand that Your Honors may disagree with the necessity of everything coming in. And again, we don't think it was a necessity. It was a trial strategy. But even so, we do maintain that the admission was harmless and not unduly prejudicial because we still have evidence that could have convicted. Okay. Thank you very much. Thank you, Your Honor. Justice Burke? Yes. Good morning, Ms. Diaz. Good morning, Justice Burke. Okay. So, normally on a PSMB, you, in order to establish that the defendant knew the car was stolen, you have to show that locks were punched or the steering column was peeled or there's some type of windows are broken out. Those would all indicate someone knew or should have known the car was stolen. Correct? Correct. So, in this case, you have none of that. Right? We do not. Okay. So, what you're using or pointing to as indicative of that the defendant knew or should have known the car was stolen was his light and today the proximity he was in to the crime. Is that correct? You're talking about the locality of the circumstances that allowed us, that showed his knowledge? I'm struggling to figure out how you're getting the knowledge element and it seemed to me based on your argument today that the consciousness of guilt was based on his flight. Right? Yes. Okay. And then the proximity, he's nine miles away when he's found. Was there any testimony that he lived by where this carjacking occurred or was there any testimony indicating that he had talked to anybody who heard about it? No. So, the proximity argument is just kind of, let's speculate because this was a big deal and a shot was fired that he may have heard about it somehow and knew this car was stolen. Is that correct? That would be for the proximity between the places, not the proximity in time. The proximity in time. The proximity in places is over nine miles away and you think that's sufficient to say that they're right in the same ballpark and they should have known about it? I don't think it conclusively establishes it, but it definitely makes it a neighborhood. It's not, but... Okay. I don't like that argument. Let's put it that way. I'm not wild about it. I understand. But I know you got a job to do. Okay. I got another question though. You said that there was no difference between crimes that are committed as juvenile and crimes that are committed as an adult. Right? As far as elements of defense. Correct. Elements of defense are the exact same. So, the only difference comes into play in sentencing. Right? Right. Okay. So, if this crime occurred now, based on the amendments to the Juvenile Court Act, his delivery charge or possession charge, whatever that was, when he was 17, that wouldn't come into play at all. Correct? If he were charged now? And 17. If he were 17 today. So, they used two crimes, the attempt murder and the drug case from when he was 17. Correct. So, in order to get him into the Class X range. In order to get him sentenced as a Class X murderer. They could not have used that case from when he was 17 today as an enhancement to get him into the Class X enhancement. If it had been a juvenile adjudication as opposed to a conviction? Just in general. Let's say he's charged today under Miles, which is still good law as far as I'm concerned. Under Miles, they couldn't use that conviction today to push him into the Class X range. Right? Under Miles, no. Okay. So, is your argument today that we should disregard Miles and come out the other way? Yeah. Depart from its reasoning, for sure. That is our argument, Your Honor. Okay. Sorry it took so long for me to understand that question. I get it. I get it. So, if we did that, if we departed from Miles, is there any case law that says you can disregard the amendments to the Juvenile Court Act? I guess my argument is, is there anything prohibiting us from looking at the Juvenile Court Act amendments retroactively? Hunter and Richardson, I believe, were the cases I discussed in my brief. One discusses elevating the age for the juvenile court jurisdiction, and then the other discusses automatic transfers. But there are discussions in both of those cases about how the amendments to the Juvenile Court Act are prospective and not to be applied retroactively. Okay. Thank you, Ms. Diaz. Thank you, Your Honor. Ms. Diaz, as far as the evidence of knowledge, if the state had introduced solely the fact that this vehicle had been stolen 20 hours earlier, in the law, there's a recognition, is there not, that an inference may be raised that if you're in possession of recently stolen property, like a car, that the inference of knowledge can be raised of this stolen property. Isn't that the law? That if you show that he had possession, and you got that through other evidence, and he was arrested, and he was in the car, there's an inference that the law permits to be told to the jury that you have shown knowledge. Was that instruction given? I don't think so. I don't think so, Your Honor. Well, normally, we're still, I think that you can't really run from the fact that this was evidence of other crimes. And evidence of other crimes is admissible for multiple reasons, one of those being knowledge. But isn't it true that the law also recognizes that that knowledge or the evidence of this other crime should never, ever become a pivotal aspect of the state's case? Yes. Was there overkill in this case? We don't believe that there was overkill. And again, part of our position is that even without the evidence, we would have been fine, but we don't believe that it was overkill, but we do acknowledge that we could have proven it without this evidence. Okay. And that's part of your reason that it's a harmless error. But the state argued in closing, didn't they really tell the jury that, hey, there's a good chance that he actually was involved in this other offense? There were three people involved. It happened 20 hours earlier. I mean, the defendant had to argue in response that he is not responsible for this other crime. The opening of the state's case and the rebuttal suggested that, hey, this is a little bit coincidental that lo and behold, he's in this car that had been violently removed from Veal earlier the night before, but within 20 hours. They had to argue that in closing. They argued it was just for knowledge, but then they argued, hey, 20 hours later, he just happens to be with two of his best buddies and they've got this car and it was stolen and it was taken very violently with shots being fired and an armed robbery to boot. I mean, I think it was used as evidence of other crimes. I think it was used to show propensity. But the other thing I want to ask you is, normally an evidence instruction would be given. A limiting instruction? About either knowledge, that this is being used solely to show his knowledge, not commission of the offense. If it was evidence of other crimes for some other reason, there would be a limiting instruction. Does that make a difference here that the court didn't give any instruction at all? So the jury was left to consider it however they wanted? I think an instruction certainly could have been helpful. But as it was alluded to before, I don't remember by one of your honors, there was no instruction requested. That's my recollection that nobody requested. And I think it could have been helpful, certainly. All right, I'll move on to the, well, one last comment. The other offenses, rather, aggravated vehicular hijacking, armed robbery, those are much greater offenses recognized in the law than possession of a stolen motor vehicle. I mean, there was evidence of these greater crimes and he wasn't even on trial for those. But without a limiting instruction, I don't know. Okay, I'll move on now to the Miles question. What does the meaning of, what did the legislature mean when they said an offense now classified as a Class II? What did they mean by now? It meant we have to look at, the plain language just means we have to look at what the elements of that offense are now. And the elements continue to be what they were when the defendant committed them when he was 17. And age is simply not an element. His conviction remains, go ahead, Your Honor. No, no, you finish. His conviction, as I argued, remains a conviction. And the fact that he was 17, that does not change what the elements are now. So the offense that he committed when he was 17 remains a felony, a Class I felony now. The only thing that the age would change is it would trigger juvenile court jurisdiction. That's it. Not the classification of the offense. But in order to convict a person of possession of a controlled substance with intent to deliver now, they would have to be over 17. In other words, there is no offense for a 17-year-old for possession of a controlled substance with intent to deliver. I mean, I don't know. So age is not an element, but it is something the state would have to prove. But again, those amendments, the 2016 amendments, are to be applied prospectively. And really, no way to get around that and just convert defendant's conviction to a juvenile adjudication when the law is clear that there's no distinction between a conviction other than which court has jurisdiction. All right. I wanted to ask you about that Fitzsimmons case. Because it seems like that was the primary case you were relying on. But in Fitzsimmons, we don't have this statutory language about what is now classified as an offense. That was not the issue in Fitzsimmons, was it? They weren't interpreting language identical to this. There is a case that interprets this language that you also cite, I believe. Isn't there? This language has been interpreted, but not by the Supreme Court. The language, the statute? Oh, yeah. So there were Bryant, and there were, I believe, two or three other cases that actually followed Fitzsimmons. So prior to Miles, the appellate court was actually following Fitzsimmons and treating convictions obtained when somebody's a juvenile the same as convictions obtained when somebody is an adult. Is there any case that you can supply us with, though, where the legislature had changed the age for an offense? That seems to be what the defendant is really honing in on here, that the 2016 amendment has removed this as an offense now classified as possession with intent to deliver. I don't know if you understand my question. If there is a case that I can point to, if Your Honor could repeat that. What I'm saying is that the defense is honing in on the fact that if you're charged with possession with intent to deliver now, and you're 17, it's not a Class II felony anymore. So that's what they're arguing, that it's no longer... Their argument, I think, is that this now language has some meaning in light of the 2016 amendment. But if we can't even apply that to retroactively prosecute people who committed this... Who committed this in 2015 in juvenile court, why would it make no sense to apply those amendments in such an attenuated way to convert defendant's criminal conviction into an adjudication? So to the extent that he's relying on the Juvenile Court Act, that's unpersuasive. All right. Well, your argument is twofold. One, the elements of possession of a controlled substance with intent to deliver have not changed. And so they're still the same. And two, if we follow, Miles, and some of us have, that we're improperly applying the Juvenile Court Act statute retroactively when the legislature told us specifically that this shall not apply retroactively. You have two arguments. Correct. Okay. I don't have any other questions. And I apologize. Do Justice Ellis and Justice Burke have any other questions at this time? I'm good. Thank you. No questions. No, thank you. All right. Thank you, Ms. Diaz. We're going to go back now to defense counsel. Ms. Bendok, do you have some rebuttals? You had about two minutes or less to go. Just briefly. In regard to the state's argument that this attracted police attention and therefore it made it more likely that people in the area, including Binion, knew about this armed hijacking, I would say that that argument is just completely speculative. There's no evidence to support it. And it doesn't even make any sense because if this hijacking was the talk of the neighborhood, if everybody knew about this in that whole area, why then would Binion be just driving the car openly on the streets if this is, according to the state, you know, the hottest car in the whole area. So, and moreover, it, you know, they, again, this could have been established by, through testimony that the hijacking attracted substantial police activity. If the state wants to make that argument, they could have easily established that without bringing in all of these details about the robbery and the firearm being discharged. As to the harmless air argument, you know, again, I think it is important to note, yes, again, there was no windows broken or anything like that on the car. As to the license plates, I think you can, again, look at the tainting effect of Veal's testimony on how the jury considered this evidence. Had the jury not been primed to believe that Binion was involved in the hijacking, they would have assumed then that whoever stole the car and not Binion was responsible for changing the license plate, which would make sense if, you know, whoever stole this car, if it is, you know, if it did attract substantial police attention, if it was a hot car, they likely would have been looking to unload it onto and, you know, offload it onto a unsuspecting buyer as quickly as possible. And just to reiterate the argument in regard to Miles, you know, he's not arguing that his 2004 conviction was not an adult conviction. It's just that you have to look at the language in the class X sentencing statute, which says now, and it includes now for a reason. And the class X sentencing statute and the habitual criminal sentencing statute are unique in their use of the word now. Other sentencing statutes don't have that. And I think that intends, it reflects a clear intent on the part of the legislator to look at developments in the law, such as the amendments to the juvenile court act. And with that, I have no further points. And I'd be free to answer any more questions. Justice Ellis, do you have any questions? No questions. Thank you. Justice Burke. No questions. Thank you. And I have no questions. So we thank you both for the arguments today. It was well argued and well briefed and we will take it under advisement. So thank you for your honors. Thank you very much.